SATURNINO VÉLEZ ET UX., Plaintiffs and Appellants, v. SANTIAGO ITURREGUI ET AL., Defendants and Appellees. JUAN CANCIO ORTIZ, Plaintiff and Appellant, v. SANTIAGO ITURREGUI ET AL., Defendants and Appellees.

Nos. 5058 and 5059. Argued December 10, 1931.—Decided February 1, 1933.

E.. *Ortiz Romeu, L. A. García del Rosario,* and *M. García González* for appellants. *Celestino Iriarte* for appellees.

MR. JUSTICE ALDREY delivered the opinion of the Court.

These two appeals may be dealt with in a single opinion, since they refer to the same accident, the evidence being the same in both cases. In the action in which the first of these appeals originated, damages are claimed for the death of Francisco Vélez Morales, known as Franco Vélez, caused by a motor truck of the defendants; and in the other action a

recovery is sought for the death of the mare on which Vélez was riding at the time he was killed in the accident. In both cases the appeals have been taken by the respective plaintiffs.

It was alleged in the complaint in each case that the death was due solely and exclusively to the fault and negligence of the defendants' chauffeur in driving the truck on the left side of the road leading from Carolina to Río Piedras, at an excessive rate of speed, without blowing the horn and without taking due precautions or care. The defendants admitted the deaths but denied that their chauffeur was negligent.

There were five persons present at the place of the accident when the same occurred: two peons on an ox-cart belonging to the owner of the dead mare, and the chauffeur and two peons that were riding in the truck. The first two of these persons were introduced as witnesses by the plaintiffs and the other three by the defendants. The men on the ox-cart testified that at the time of the accident it was beginning to get dark, and the other three men stated that it was dark and cloudy. The five men agreed that the truck had the lights on and also that the ox-cart had no lights, as according to the two peons their lantern had gone out and they had stopped the cart in order to light it. The conclusion may thus be reached that it was dark at the time of the accident that gave rise to the two suits.

From the evidence adduced the lower court held that it had been shown that an ox-cart full of grass had been stopped on the right-hand side of the road; that the driver, Nerio Ramírez, was under the cart lighting the lantern and his helper Epifanio Ramírez, with a goad stick in his hand was in front of the oxen, looking towards Río Piedras; that defendants' truck driven by chauffeur Francisco Sánchez, on which were riding as peons Nicolás Hernández and Agapito Márquez, was carrying from Carolina to Río Piedras four cubic meters of sand and had its lights on; that the truck

was running at a moderate rate of speed because it was loaded and going up a low hill; that when the chauffeur saw the ox-cart he reduced the speed, blew the horn, and swerved to the left so as to pass the cart, which was parked, and then Franco Vélez, who was riding on the mare and who seemed to have been going towards the farm of Cancio Ortiz, appeared in front of the truck and stopped in the middle of the road. That the mare was frightened and the truck hit it violently with the front left fender; that the boy and the mare fell to the ground and the truck ran over them, and that notwithstanding the fact that the chauffeur attempted to defend them by swerving the vehicle somewhat to the right, he killed them; that the truck stopped immediately in front of the ox-cart, picked Francisco up and carried him immediately in the same truck to the town of Río Piedras, where the police was notified.

With respect to the two helpers on the ox-cart who testified on behalf of the plaintiffs, the lower court stated in the opinion which forms the basis of its judgment, that they claimed to be eyewitnesses and that in affidavits taken and signed before Notary Public Celestino Iriarte, on the day following the accident, they stated that at the time of the accident one of them was in front of the oxen and the other lighting the lantern, and that they noticed, after the collision, what had happened, but did not notice the facts at the time of the occurrence; that there is another affidavit made by Nerio Ramírez before the Municipal Judge of Río Piedras on the day following the accident, to which he only affixed his mark although the one that he made before the notary was signed. In that affidavit he stated that at the time of the accident he was lighting the lantern when he heard the impact and came out. He saw then that the mare was lying on the ground and that Franco Vélez was dead. The court went on to say that if the testimony of these two witnesses given at the trial of the criminal cause against Francisco Sánchez were examined, one would notice the

effort made to show that they had seen the accident, that is, the collision, but that of this the court was not convinced.

The first two assignments set up that the lower court erred in admitting in evidence the affidavit by Epifanio Ramírez, witness for the defendants, alleged to have been taken before Notary Celestino Iriarte; and also in admitting the affidavit of witness Nerio Ramírez, alleged to have been taken before that notary.

These affidavits were presented in order to contradict the testimony of these witnesses during the trial, and plaintiffs claim that they should not have been admitted in evidence because, as both witnesses denied during the trial of these cases that they had deposed before said notary, the latter should have appeared as a witness, which he failed to do, to show the execution of said affidavits. These witnesses admitted that they had been in the office of the notary; that they stated what is set forth in the affidavits, and that they signed the same, though not before the notary. In view of this, the document was admissible in evidence to show the statements made on that occasion; but if any error had been committed in admitting them, such error would be harmless, as similar affidavits taken before a judicial officer by the same witnesses have not been impeached by the appellants.

The third assignment is that error was committed in not allowing counsel for the plaintiff to continue the cross-examination of Nicolás Hernández, a witness for the defendants.

This witness was subjected to a long cross-examination and the court, believing that the same question had been asked two and three times, granted five additional minutes for the cross-examination to continue, and counsel for the plaintiffs then answered that they postponed their further examination until the afternoon session, for which reason the court considered the examination of the witness as ended.

Counsel for the plaintiffs could not by themselves postpone the cross-examination of the witness until another

session of the court. Moreover, the court has discretionary power to conduct the trial and also to intervene *sua sponte* if the cross-examination is unnecessarily prolonged. Consequently, the alleged error is nonexistent.

The findings of the court below to which reference has been made at the beginning of this opinion are justified by the transcript of the evidence appearing of record. Hence, we cannot hold that manifest error was committed in weighing the evidence or in holding that there was no negligence chargeable to the defendants, as claimed in the fourth assignment. It is to be noted that the lower court did not believe that the two witnesses for the plaintiffs had seen the accident at the time it occurred, and that from the testimony of the three eyewitnesses for the defendants it appears that the mare on which Franco Vélez was riding suddenly stopped across the road in front of the truck; hence the latter could not have been swerved in such a manner as to avoid the accident, and no negligence on the part of the chauffeur of the defendants has been shown.

The appellants in their brief cite the Motor Vehicle Act in support of their contention that negligence on the part of the chauffeur for the defendants was shown. Subdivision (c) of section 12 of said act provides that every person operating a motor vehicle, on approaching any vehicle drawn by animals, or any animal on which a person is riding or one which is being led, shall exercise every reasonable precaution to prevent frightening such animals, and if such animals appear to be frightened, shall reduce the speed of the motor vehicle and on signal from the person in charge of said animals stop the vehicle, and, if necessary, the motor. The chauffeur complied with this provision of the law, for it appears from the evidence that on seeing that the mare was frightened and stood across the road, he reduced the speed of the truck and tried to bring it to a stop, although in the emergency he did not have enough time to do so. Section 8 of the same act provides that every automobile being

operated at night shall display at least two white lights, visible at least two hundred and fifty feet in front of such vehicle. What this provision requires is that the lights of every automobile be visible, that is, that they be seen from the stated distance. No evidence was introduced to show that the lights of the truck were not visible from said distance and, therefore, it cannot be held that the law was violated or that there was negligence on the part of the appellees.

In view of the findings made by the lower court upon the evidence, it was not necessary for that court to determine, as it did not determine, whether there was contributory negligence on the part of Franco Vélez, and hence we need not consider the last assignment wherein it is claimed that the court erred in sustaining the defense of contributory negligence set up by the defendants.

The judgments appealed from will be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.